**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| SLT, L.L.C., | ) |
| | ) |
|      **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **CIVIL ACTION NO. 07-0815-CG-C** |
| | ) |
| TRI KHAI TRAN, <u>et</u> <u>al.</u>, | ) |
| | ) |
|      **Defendants/Counterclaim** | ) |
|      **Plaintiff/Third-Party Plaintiffs,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| STUART A. PARNELL, <u>et</u> <u>al.</u>, | ) |
| | ) |
|      **Third-Party Defendants.** | ) |

## <u>ORDER</u>

This matter comes before the court on the defendants' motion for summary judgment. (Doc. 79). For the reasons set forth below, the motion is **GRANTED**.

## I.    FIRST-PARTY COMPLAINT

In its amended complaint, SLT, L.L.C. ("SLT"), a limited liability company organized under the laws of the State of Alabama, alleges claims against defendants, Tri Tran ("Tri"), Lien Tran ("Lien"), V.T., K.T., Tran Enterprises, Inc. d/b/a Eye Express ("Eye Express"), and TLVK Properties, L.L.C. ("TLVK"). (Doc. 30, pp. 1-2, ¶¶ 1-7). Tri and Lien are Mobile County, Alabama, residents. (Doc. 30, p. 1, ¶¶ 2 and 3).

The complaint alleges that Stuart Parnell ("Parnell") formed SLT with Lien in August 2005. (Doc. 30, p. 3, ¶ 11). Lien borrowed $7,000 from a relative in order to purchase her

interest in SLT.  (Doc. 30, p. 3, ¶ 12).[1]  Tri did not invest any money in SLT, but he labored for

SLT's benefit and SLT paid him.  (Doc. 30, p. 3, ¶ 13).

      After SLT was organized, Lien used SLT funds to repay her relative who lent her the

$7,000 to invest in the company.  (Doc. 30, p. 3, ¶ 14).  Lien also used $15,000 to pay TLVK,

which is owned by Tri, Lien, V.T., and K.T.  (Doc. 30, pp. 3-4, ¶ 15).  Although TLVK

apparently provided rental and other use of property to SLK, the $15,000 was not paid to TLVK

for those provisions.  (Doc. 30, pp. 3-4, ¶ 15).  SLT instructed Lien to file its tax return but Lien

refused to do so.  (Doc. 30, p. 4, ¶ 16).  Lien also interfered with SLT's ability to pay accounts

payable and receive accounts receivable by destroying, disposing of, or otherwise interfering

with SLT's checkbook.  (Doc. 30, p. 4, ¶ 17).

      During SLT's business operations, Tri and Parnell developed an eyeglasses invention.

(Doc. 30, p. 4, ¶ 18).  In particular, Tri and Parnell developed "methods and apparatuses for lens

and glasses for near and intermediate viewing."  (Doc. 30, p. 4, ¶ 18).  Tri applied to patent the

invention because Parnell was a defendant in a lawsuit involving polarized eyewear.  (Doc. 30,

p. 5, ¶ 21).  Tri filed a patent application entitled "Methods and Apparatus for Lens and Glasses"

on February 9, 2006.  (Doc. 30, p. 5, ¶ 22).  Tri's patent application indicated that Tri was the

sole inventor of the product.  (Doc. 30, p. 5, ¶ 23).  The United States Patent and Trademark

Office issued Tri patent number 7,234,811 on July 26, 2007.  (Doc. 30, p. 5, ¶ 24).  The patent

and any other trade secrets that Tri developed while employed with SLT belong to SLT.  (Doc.

30, p. 6, ¶ 26).  SLT is the rightful owner of any patent developed while Tri worked for SLT.

---

[1] Although the "facts" listed in this section of the opinion read as if they are findings of
fact, they are only a recitation of the allegations of the complaint.

(Doc. 30, p. 6, ¶ 28).  Consequently, the product made pursuant to the patent is also the sole property of SLT.  (Doc. 30, p. 6, ¶ 30).

Despite SLT's demands, the defendants have not assigned the patent over to SLT.  (Doc. 30, p. 5, ¶ 25).  Tri has used and is using trade secrets in an effort to compete unlawfully with SLT.  (Doc. 30, pp. 5-6, ¶ 25).  Tri, Lien, and Eye Express are using misappropriated trade secrets obtained from SLT.  (Doc. 30, p. 6, ¶ 27).  They are trying to usurp corporate opportunities, compete unfairly, and create confusion in the marketplace with respect to SLT's products.  (Doc. 30, p. 6, ¶ 29).

SLT brings 10 counts against the defendants.  Count One is entitled "Theft of Property - First Degree."  (Doc. 30, p. 7).  Count One alleges that a patent is owned by the company whose employee applies for the patent if the employee helped develop the patent during work hours for the benefit of the company.  (Doc. 30, p. 7, ¶ 31).  Because Tri was an employee of SLT when he developed the patent, Tri and Eye Express are committing "the crime of theft of property in the first degree" by exercising control over SLT's patent.  (Doc. 30, p. 7, ¶¶ 32 and 33).  In addition, Lien is accused of stealing the $15,000 she paid to TLVK and the $7,000 she paid to her relative. (Doc. 30, p. 7, ¶¶ 34 and 35).

Count Two is for tax evasion.  (Doc. 30, p. 8).  SLT alleges that "[b]ecause Lien has refused to pay taxes due to the federal and state governments, the defendants are liable for tax evasion."  (Doc. 30, p. 8, ¶ 38).

Count Three is for breach of fiduciary duties.  (Doc. 30, p. 9).  SLT alleges that the defendants violated fiduciary duties by misappropriating trade secrets, usurping corporate opportunities, and competing with SLT while acting as representatives of SLT.  (Doc. 30, p. 9,

¶¶ 42 and 43).

Count Four is for conversion.  (Doc. 30, p. 10).  It alleges that the defendants converted property rights in SLT's patent, trademarks, and other trade secrets.  (Doc. 30, p. 10, ¶¶ 45 and 46).  The defendants also allegedly converted eyewear products and related merchandise without SLT's authorization.  (Doc. 30, p. 10, ¶ 47).

Count Five is for misappropriation of trade secrets.  (Doc. 30, p. 10).  SLT alleges that the defendants improperly obtained and used SLT's trade secretes.  (Doc. 30, p. 11, ¶¶ 49-53).

Count Six is for civil conspiracy.  It alleges that the defendants conspired to compete unfairly with SLT, misappropriate SLT's trade secrets, and commit fraud against SLT.  (Doc. 30, p. 12, ¶ 55).  In addition, Lien's $15,000 and $7,000 payments were part of a civil conspiracy to defraud SLT.  (Doc. 30, p. 12, ¶¶ 56-57).

Count Seven alleges interference with business relations.  (Doc. 30, p. 12).  Prior to issuance of the patent, SLT reached a tentative agreement to sell the patent to a third party.  (Doc. 30, p. 13, ¶ 60).  The defendants are allegedly jeopardizing the deal to sell the patent by refusing to concede SLT's ownership of the patent.  (Doc. 30, p. 13, ¶¶ 62 and 63).

Count Eight alleges criminal tampering.  (Doc. 30, p. 14).  It alleges that by wrongfully claiming possession of the patent, the defendants are interfering, meddling with, or making an unwanted alteration of the patent's condition.  (Doc. 30, p. 14, ¶¶ 66-67).

Count Nine alleges misapplication of property.  SLT alleges that it trusted Tri to apply for the patent on SLT's behalf as SLT's fiduciary.  (Doc. 30, p. 15, ¶ 70).  The defendants' position that they possess the patent is contrary to the applicable law and constitutes misapplication of property.  (Doc. 30, p. 15, ¶¶ 70 and 71).

Count Ten is for spoilation of evidence.  (Doc. 30, p. 15).  SLT alleges that the defendants attempted to obfuscate their theft of SLT's funds by destroying the evidence pertaining to the theft claims.  (Doc. 30, p. 16, ¶¶ 74-75).

In addition to compensatory and punitive monetary damages, SLT wants a declaration that its trade secrets, including the eyeglasses product reflected in the patent, are SLT's property and that the defendants have no interest in the patent.  (Doc. 30, pp. 16-17, ¶ 1).  SLT also seeks an injunction instructing that "any sales of products made by defendants will be credited to" SLT and enjoining the defendants from further infringing on SLT's intellectual property with respect to the eyeglasses product and from taking any action to circumvent or transfer the patent.  (Doc. 30, p. 17, ¶¶ 2 and 3).  Similarly, SLT wants unspecified relief designed to prevent the public from erroneously attributing the defendants' products to SLT.  (Doc. 30, p. 18, ¶ 5).  Finally, SLT seeks relief pursuant to 15 U.S.C. §§ 1117 and 1125(a).  (Doc. 30, p. 18, ¶ 7).

## II.     THE DEFENDANTS' COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Tri filed a counterclaim pursuant to Rule 13 of the Federal Rules of Civil Procedure.  In his counterclaim, Tri denies the allegation in SLT's complaint that Tri was an SLT employee. He alleges, though, that if the court determines that Tri was SLT's employee, Tri should recover $45,000 for work and labor done.  (Doc. 40, pp. 15-16, ¶¶ 86-88).

All of the defendants filed a third-party complaint under Rule 14 of the Federal Rules of Civil Procedure against Parnell, Patty Parnell, The Nautical Group, The Nautical Group LLC, and The Nautical Group, s/b/a PMP, LLC.  (Doc. 49-2, pp. 1-2, ¶¶ 1-5).  In relevant part, the third-party complaint describes the events that are the subject of the first-party complaint from the defendants' perspective.  The defendants allege claims for (1) breach of fiduciary duty, (2)

5

fraud, (3) "lawsuit on promissory note," and (4) misuse of funds.  The counts are generally based on failure to inform the defendants about certain facts before SLT was formed, misdirection of money, and failure to make payments on a promissory note.

## III.    SUBJECT MATTER JURISDICTION

### A.    The First-Party Complaint

SLT alleges that this court has jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.  (Doc. 20, p. 2, ¶ 9).  28 U.S.C. § 1331 is commonly called the "federal question jurisdiction statute."  It vests this court with "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

28 U.S.C. § 1338 applies to intellectual property.  It says:

**(a)**     The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.  Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.

**(b)**     The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws.

28 U.S.C. § 1338.

In order for § 1338(a) to provide a basis for original subject matter jurisdiction over the first-party case, the plaintiff's "well pleaded complaint must 'establish either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law[.]'"  Holmes Group, Inc. v. Vornado Air Circulation Sys., 535 U.S. 826, 830 (2002) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 809 (1988)).

Finally, 28 U.S.C. § 1367 vests this court with supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

Although no party has raised the issue of subject matter jurisdiction, the court addresses the issue <u>sua</u> <u>sponte</u>. <u>See, e.g.</u>, <u>Blizzard v. Food Giant Supermarkets, Inc.</u>, 196 F. Supp. 2d 1202, 1203 n.1 (M.D. Ala. 2002) (recognizing a district court's independent duty to examine subject matter jurisdiction). <u>See also</u> <u>Kirkland v. Midland Mortg. Co.</u>, 243 F.3d 1277, 1279-80 (11th Cir. 2001) (same).

In addition to one claim alleging that the defendants evaded federal taxes, many of the counts depend on the resolution of substantial questions of federal patent law. To the extent that some of the counts do not raise federal questions or depend on the resolution of a substantial question of federal patent law, they are sufficiently related to such federal or patent claims that they form part of the same case or controversy, providing this court with supplemental jurisdiction over them pursuant to § 1367.

**B.      The Counterclaim and Third-Party Complaint**

Tri's counterclaim is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil procedure because it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." The Eleventh Circuit follows the "logical relationship" test to determine whether a counterclaim is compulsory. "Under this test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the

defendant.'" <u>Republic Health Corp. v. Lifemark Hospitals of Florida, Inc.</u>, 755 F.2d 1453, 1455 (11th Cir. 1985).  Because the counterclaim is compulsory, this court has supplemental jurisdiction over it pursuant to 28 U.S.C. § 1367.  <u>E.g.</u>, <u>King v. Hainje's, Inc.</u>, Civil Action 08-00161-KD-B, 2008 U.S. Dist. LEXIS 59821, at **4-5 (S.D. Ala. July 22, 2008).

The court also has supplemental jurisdiction over the third-party complaint pursuant to 28 U.S.C. § 1367.

## IV.   SUMMARY JUDGMENT

The defendants moved for summary judgment on Counts One, Two, Three, Four, Five, Six, and Seven of the first-party complaint and for summary judgment on Count Three of the third-party complaint.  SLT withdrew Counts One, Two, and Five of the first-party complaint.  (Doc. 94, p. 9).  SLT also withdrew its claims against V.T., K.T., TLVK, and Eye Express, which leaves Tri and Lien as the only defendants in the first-party case.  (Doc. 94, p. 9).

No party moved for summary judgment on Counts Eight, Nine, or Ten on the first-party complaint, for summary judgment on Tri's counterclaim, or for summary judgment on Counts One, Two, or Four of the third-party complaint.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  As the Eleventh Circuit succinctly stated:

> A factual dispute is genuine only if "a reasonable jury could return a verdict for the nonmoving party."  <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (citation omitted).  The moving party bears the burden of proving that no genuine issue of material fact exists.  <u>O'Ferrell v.</u>

> United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument
> of the moving party, the district court must view all evidence in the light most
> favorable to the non-moving party, and resolve all reasonable doubts about the
> facts in its favor.  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.
> 1999).  Assuming the moving party has met its burden, the non-movant must then
> show a genuine dispute regarding any issue for which it will bear the burden of
> proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553,
> 91 L.Ed.2d 265 (1986).

Info. Sys. and Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224-25 (11th Cir. 2002).  The

purpose of summary judgment "is to pierce the pleadings and to assess the proof in order to see

whether there is a genuine need for trial."  Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587,

592 (11th Cir. 1995), cert. denied sub nom. Jones v. Resolution Trust Corp., 516 U.S. 817

(1995).

> In opposing a motion for summary judgment, "a party may not rely on his
> pleadings to avoid judgment against him."  Ryan v. Int'l Union of Operating
> Engrs, Local 675, 794 F.2d 641, 643 (11th Cir. 1986).  There is no burden upon
> the district court to distill every potential argument that could be made based
> upon the materials before it on summary judgment.  Blue Cross & Blue Shield v.
> Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990).  Rather, the onus is upon the parties
> to formulate arguments; grounds alleged in the complaint but not relied upon in
> summary judgment are deemed abandoned.  Road Sprinkler Fitters Local Union
> No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994)(citing
> Lazzara v. Howard A. Esser, Inc., 802 F.2d 260, 269 (7th Cir. 1986)), cert.
> denied, 513 U.S. 868, 115 S.Ct. 189, 130 L.Ed.2d 122 (1994).

Id. at 599.  The "complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial."  Celotex Corp., 477 U.S. 323.  The

failure by the nonmoving party to make a sufficient showing on an essential element of its action

entitles the moving party to judgment as a matter of law.  Id. at 323.


## V.      FACTS

Tri and Lien are husband and wife.  They have operated Eye Express, a retail optical

store, since 1991.  (Doc. 80-10, p. 3; Doc. 80-9, p. 9).  Parnell approached Tri, asking whether he could make a particular type of glasses lens.  (Doc. 80-9, pp. 6-9).  Parnell's idea at the time was to create sunglasses with a bifocal insert in the lower segment of the lens.  (Doc. 94-4, p. 3).  Tri made Parnell one pair of the lenses but told Parnell that it would not be cost effective to utilize the thick lenses for various reasons.  (Doc. 80-9, pp. 6-9).  Tri suggested that Parnell should go to Mexico or China to find thinner lenses.  (Doc. 80-9, p. 7).

Two years later, Parnell presented with the thin lenses and asked Tri to cut them and put them in frames.  (Doc. 80-9, pp. 7-8).  After negotiations, it was agreed that Tri would be paid $4.00 per pair of sunglasses.  (Doc. 80-9, pp. 8-9).

Parnell and Lien organized SLT on August 12, 2005.  (Doc. 80-7).  Parnell and Lien are the only two members of the company.  (Doc. 80-7, p. 5).  Parnell was named SLT's first manager.  (Doc. 80-7, p. 2).  The record does not show whether Parnell is still SLT's manager. The defendants assert that Tri was never an owner or employee of SLT.  (Doc. 80-3, p. 3, ¶ 8). Still, the "S" in "SLT" stands for "Stuart," the "L" stands for "Lien," and the "T" stands for "Tran" or "Tri."  (Doc. 94-5, pp. 6-7).  Tri and Lien do things "fifty/fifty."  (Doc. 94-5, p. 3).  Tri executed a note with Lien, signing as guarantor on a $150,000 loan for SLT.  (Doc. 94-5, pp. 7 and 10; Doc. 94-4, p. 10).  Tri and Parnell traveled to Biloxi, Mississippi, to test a "dry edger." (Doc. 94-6, p. 3).  The decision to purchase the dry edger was made a couple of months later. (Doc. 94-6, p. 3).  Eye Express made the purchase.  (Doc. 94-6, p. 4).  The machine was initially placed at the laboratory at Eye Express, where Tri was trained to use it.  (Doc. 94-6, p. 4).  Tri then trained SLT employees to use it.  (Doc. 94-6, p. 4).  Tri expected to be compensated, on a per pair of glasses basis, for his edging work.  (Doc. 94-6, pp. 3-4; Doc. 80-3, p. 3).  An

individual named Lola Payne, who has no apparent direct involvement in this litigation, wrote a letter characterizing Tri and Parnell as "business partners."  (Doc. 94-7, p. 2).

A company called Ono's Trading Company, LLC sued Parnell on November 4, 2004, in a commercial and intellectual property dispute involving sunglasses.  (Doc. 80-4).

In January 2006, Parnell or Tri came up with the idea to produce a type of computer reading glasses, called "dual readers."  (Doc. 80-9, pp. 12-13; Doc. 94-4, p. 7).  A United States Patent was issued to Tri as the "inventor" on June 26, 2007.  (Doc. 80-6).  Tri has not developed any products from the patent.  (Doc. 80-9, p. 17).

Parnell testified that Tri applied for the patent because Parnell and Tri wanted to avoid the possibility that the patent would be seized if Parnell was found liable in the November 4, 2004, case.  (Doc. 94-4, p. 8).  Parnell and Tri agreed with each other that Tri would assign the patent to SLT after the November 4, 2004, lawsuit ended.  (Doc. 94, p. 6).[2]

Parnell e-mailed the patent attorney that helped apply for the patent on January 22, 2006, indicating that the patent was for the benefit of Parnell, Lien, and Tri.  (Doc. 94-8, p. 2).  Tri made efforts to prevent Parnell from receiving credit from the patent.  (Doc. 94-6, pp. 8-11; Doc. 94-7).

After the November 4, 2004, lawsuit was resolved, the parties discussed the possibility of assigning the patent to SLT.  (Doc. 94-4, pp. 10-11).  On March 27, 2007, Parnell sent the Transes a "speed memo," asking the Transes to assign "our" patent application to SLT.  (Doc.

---

[2]SLT cites to pages 53-54 of Parnell's deposition as the source of this fact.  Pages 53-54 of Parnell's deposition do not appear in the record.  The court will assume that Parnell did indeed testify on pages 53-54 of his deposition that he and Tri agreed that Tri would assign the patent to SLT after the November 4, 2004, lawsuit ended.

94-4, pp. 10-11; Doc. 94-9).  The Transes have not assigned the patent to SLT.

Parnell, on SLT's behalf, has successfully marketed the dual readers to an eyewear company and reached a tentative agreement with that company.  (Doc. 94-4, pp. 12-14).  The eyewear company was prepared to enter into an agreement with SLT to hold an exclusive license for the duration of the patent.  (Doc. 94-4, pp. 12-14).  Parnell disclosed the name of the company at his deposition and also confirmed certain details of the tentative agreement.  (Doc. 94-4, pp. 12-14).

Parnell signed a promissory note dated January 29, 2007, in which he agreed to pay to "Lien Tran or order," $36,500 in principal with interest at a rate of 8.25%.  (Doc. 80-5).  The note was payable in full one year from January 29, 2007.  (Doc. 80-5).  Parnell has not paid the balance due on the note.  (Doc. 82, p. 4).[3]

## VI.   COUNT THREE OF THE FIRST-PARTY COMPLAINT - BREACH OF FIDUCIARY DUTY

The first-party complaint alleges that the defendants were SLT employees and representatives of SLT.  (Doc. 30, p. 9, ¶¶ 40 and 41).  The defendants allegedly breached fiduciary duties by misappropriating trade secrets and engaging in the other acts of unfair competition outlined in the first-party complaint.  (Doc. 30, p. 9, ¶¶ 42 and 43).

The defendants argue that Lien is due summary judgment on any claims based on the $15,000 payment she made to TLVK and the $7,000 payment she made to a relative.  The

---

[3]This paragraph is relevant to the third-party complaint.  No party responded to this aspect of the motion for summary judgment.  The defendants direct the court to pages 34-36 of Parnell's deposition to support their assertion that Parnell has not paid the balance due.  Those pages of Parnell's deposition do not appear in the record.  No party disputed this fact, so it is deemed admitted.  SD ALA LR 7.2(b).

defendants argue that both payments were made at the direction of and/or with the knowledge of Parnell. (Doc. 80, pp. 6-7). Considering the patent at issue, the defendants argue that Lien is entitled to summary judgment because she did not own the patent, so she cannot be liable for failing to assign its rights. (Doc. 80, p. 7). There is also no evidence, they argue, that Lien was involved in the patent application, so she cannot be liable for Tri's independent actions with respect to the patent's acquisition. (Doc. 80, p. 7). SLT does not address the defendants' arguments that Lien has not breached any fiduciary relationship. Lien's motion for summary judgment is **GRANTED** as to Count Three because SLT abandoned any claims it alleged against Lien. As explained above, "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." <u>Resolution Trust</u>, 43 F.3d at 599.

The defendants argue that this claim should be dismissed against Tri because he was not an SLT employee. (Doc. 80, pp. 6-7). With respect to Tri, SLT argues that Tri was an SLT fiduciary because Tri was an agent or a contractor of SLT, or because Tri sufficiently inspired SLT's trust and confidence to create a fiduciary relationship. (Doc. 94, pp. 13-18).

Relying on the theory that, "[i]t is an agent's duty to act, in all circumstances, with due regard for the interests of his principal and to act with the utmost good faith and loyalty," <u>Systrends, Inc. v. Group 8760, LLC</u>, 959 So. 2d 1052, 1078 (Ala. 2006) (quotations and citations omitted), SLT argues that Tri owed SLT a fiduciary duty. The facts do not show that Tri was an SLT agent or employee. No party cites any law in support of its position that Tri was an SLT agent. The parties agree that Tri was not a member of SLT.

> The test for determining whether a person is an agent or employee of another, rather than an independent contractor with that other person, is whether that other

person has reserved the right of control over the means and method by which the person's work will be performed, whether or not the right of control is actually exercised.

Martin by & Through Martin v. Goodies Distrib., 695 So. 2d 1175, 1177 (Ala. 1997).  SLT argues that there are facts in the record that tend to show Tri expended some efforts on SLT's behalf, and that Tri expected to be compensated for some or all of his efforts, but SLT does not direct the court to any facts tending to show that SLT had the right to control the means or method by which Tri performed.  Although disputes "over the existence of an agency relationship [generally] involve[] a question of fact for the jury," there are no facts in the record tending to show that SLT was in a position to control Tri's conduct.  Merrell v. Joe Bullard Oldsmobile, Inc., 529 So. 2d 943, 945 (Ala. 1988).  SLT also does not direct the court to any cases that stand for the proposition that an independent contractor owes a fiduciary duty to the company that contracts for his services.

Relying on two Bankruptcy Court cases from other jurisdictions and a District Court case from Florida, SLT asks the court to imply a fiduciary relationship based on how the parties conducted themselves with respect to the patent application.  The District Court case from Florida, Nationwide Chemical Corp. v. Wright, 458 F. Supp. 828 (M.D. Fla. 1976), does not advance SLT's case.  The portion of that opinion on which SLT relies, without itself citing to any authority, decided that, when the president of a company applied for foreign patents, he did so as the company's fiduciary and held the patents in his capacity as the company's fiduciary. Id. at 836.  Tri is not a member of SLT and he is not an employee of SLT.  The Wright case does not apply to the facts before this court.

The two Bankruptcy Court cases, Stonecraft, L.L.C. v. Slagter (In re Stonecraft, L.L.C.),

322 B.R. 623 (Bankr. N.D. Miss. 2005), Access Cardiosystems, Inc. v. Fincke (In re Access
Cardiosystems, Inc.), 340 B.R. 127 (Bankr. D. Mass. 2006), are no more helpful to SLT.  The
court in Stonecraft recognized that "[t]he general rule is that an inventor owns the patent rights
to an invention even though the invention was conceived and/or reduced to practice while the
inventor was employed."  Stonecraft, 322 B.R. at 630.  The court set out certain exceptions to the
general rule that may apply if the inventor is an employee of the company seeking rights in the
patent.  Id. at 630-31.  None of those exceptions apply here because Tri was not an employee of
SLT.  Next, the court explained that:

> It is generally accepted that a person who functions, at the time of the invention,
> in a fiduciary capacity in a business organization, may be under an obligation, in
> the absence of agreements to the contrary, to assign any patents resulting from the
> invention to the organization.  That person need not be an employee, and need not
> have been hired to invent.  Thus, where the inventor is more than an employee
> and occupies a special relationship of trust and confidence to the business, courts
> under certain circumstances have held that it would be inequitable for the
> individual to retain a title which more properly belongs to the company.  In such
> instances, the fiduciary agent will be compelled to assign the patent.

Id. at 631 (emphases added, quotations and citations omitted).  The court then listed six factors
that it may consider "to determine if a fiduciary should be required to assign a patent to his or
her employer."  Id. (emphasis added).  In the Stonecraft case, the court found that the inventor
was a fiduciary of a company in large part because the inventor was a member and manager of
the company pursuant to the state law under which the company was organized, and
consequently the inventor was burdened with statutorily-applied duties to the company.  Id. at
632-35.  Similarly, the court in Access Cardiosystems found that, because the inventor was a
promoter, vice president, treasurer, president, and chief executive officer of the company, he
owed the company fiduciary duties under the applicable state law of Massachusetts.  Access

Cardiosystems, 340 B.R. at 147-151.

Both of the Bankruptcy Court cases SLT cites find that an inventor breached a fiduciary duty to his company when he refused to assign patent rights to the company, but both cases find the existence of a fiduciary duty based on the law of business entities in the relevant state. SLT argues that several facts in the record go to show that Tri "bore an unusual and closely connected relationship to SLT," (Doc. 94, p. 16) but there is an absence of Alabama authority showing how, or if, the facts that SLT decides to champion are relevant under the applicable Alabama law. SLT cites one case applying Alabama law in its argument on the breach of fiduciary duty count for the proposition that "[t]he fact that the relationship defies common categorization does not mean that there is no relationship." Patrick v. Union State Bank, 681 So. 2d 1364, 1369 (Ala. 1996). The relevance of the Patrick case is neither explained in SLT's brief nor readily apparent. The Patrick case involved an allegation that a bank negligently allowed an imposter to open a checking account in another person's name. Id. at 1366-67. There is no indication that the plaintiff in that case asserted any causes of action for breach of fiduciary duty.

SLT's final effort to show that Tri owed it a fiduciary duty rests on its assertion that the Stonecraft case listed "five factors that could indicate the existence of this sort of fiduciary relationship." (Doc. 94, p. 18). The five factors do not have a bearing on whether an individual owes a company a fiduciary duty. Rather, they "may be applied by a court to determine if a fiduciary should be required to assign a patent to his or her employer." Stonecraft, 322 B.R. at 631 (emphasis added). Emphatically, the Stonecraft decision does not state that the factors SLT lists are relevant for determining whether or not a fiduciary duty exists in the first place. The Stonecraft court considered those factors, after it decided that the inventor owed the company a

16

fiduciary duty, in order to determine whether the fiduciary should assign the patent to the company.  Because SLT has not shown that Tri is SLT's fiduciary, its argument based on these factors does not advance its case.

SLT has not shown that Tri is its fiduciary.  Tri's motion for summary judgment is **GRANTED** on Count Three.

## VII.   COUNT FOUR OF THE FIRST-PARTY COMPLAINT - CONVERSION

The defendants argue that they are due summary judgment on this claim because Tri cannot convert a patent he rightfully owns and there is no evidence that the defendants converted any eyewear products or related merchandise from SLT.  (Doc. 80, p. 7).

SLT advances a bailment theory in support of its claim that Tri is liable for conversion. In short, SLT argues that Tri's possession of the patent is a "wrongful" detention of SLT's property, as shown by the parties' agreement that Tri would assign the patent at the conclusion of the November 4, 2004, case.  SLT says it is entitled to immediate possession of the patent because the November 4, 2004, case has concluded.

> A bailment is defined as the delivery of personal property by one person to another for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.  In order for a bailment to exist the bailee must have voluntarily assumed the custody and possession of the property for another.

Ziva Jewelry, Inc. v. Car Wash Headquarters, Inc., 897 So. 2d 1011, 1014 (Ala. 2004) (internal quotations and citation omitted).

"In case of bailments where the possession is in the bailee, a trespass committed during the existence of the bailment will give a right of action to the bailee for the interference with his special property and a concurrent right of action to the bailor for the interference with his general

17

property."  Ala. Code § 6-5-263 (1975).

> Conversion consists of (1) an act or omission by the defendant (2) with the intent
> to assert control over property (3) that belongs to the plaintiff (4) resulting in
> substantial interference to the plaintiff's possessory rights.  In other words, a
> conversion is said to consist either in the appropriation of the thing to the party's
> own use and beneficial enjoyment, or its destruction, or in exercising of dominion
> over it, in exclusion or defiance of the plaintiff's right, or in withholding the
> possession from the plaintiff, under a claim of title inconsistent with his own.  But
> the bare possession of property without some wrongful act in the acquisition of
> possession, or its detention, and without illegal assumption of ownership or illegal
> user or misuser, is not conversion.

Martin v. Luckie & Forney, Inc., 549 So. 2d 18, 19 (Ala. 1989).  See also  SouthTrust Bank v.

Donely, 925 So. 2d 934, 939 (Ala. 2005) ("To establish conversion, one must present proof of a

wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's

property, or a wrongful detention or interference with another's property.") (quotations omitted,

emphasis omitted).

    "[P]atents . . . have the attributes of personal property," under federal law, 35 U.S.C. §

261.  No party argues that a patent cannot be "converted."

    By statute, an "inventor" must apply for a patent.  35 U.S.C. §§ 101 & 102(f).  "Under

federal law, the named inventor on a patent application is presumed to be the legal owner of the

property rights embodied in the patent application and any ensuing patents . . . ."  Access

Cardiosystems, 340 B.R. at 146.  Companies may not apply for United States patents in their

own name, id. at 147, so it was impossible for SLT to apply for the patent at issue in this case.

    The motion for summary judgment is **GRANTED** as to the claim that any defendant

converted eyewear products or related merchandise because SLT has not responded to the

assertion that there is no evidence establishing such a conversion.

    As for the allegation that Tri converted the patent, SLT would have to establish that the

patent belonged to SLT.  SLT attempts to do this by pointing to a bailment agreement pursuant to which Tri would apply for the patent, own the patent until the November 4, 2004, lawsuit was closed, and then assign the patent to SLT.  It is undisputed that SLT never owned or possessed the patent, so the question is whether there is a genuine issue of material fact that SLT was entitled to immediate possession of the patent after the November 4, 2004, lawsuit closed.

SLT has not directed the court to any cases in which a conversion claim was upheld when the plaintiff never owned or possessed the property that was allegedly converted.  The bailment cases SLT cites do not.  Martin, 549 So. 2d at 18 (There was no question that the photographer had "the right to copy, publish, and sell the photographs" that were allegedly converted.); S/M Industries, Inc. v. Hapag-Lloyd A.G., 586 So. 2d 876, 883 (Ala. 1991), ("[N]o issue [was] raised regarding [the plaintiff's] immediate right to possession of the goods."); Ziva Jewelry, 897 So. 2d at 1012-13 (misappropriated jewelry belonged to plaintiff).

The conversion cases on which SLT relies indicate that SLT must show that the defendants converted property over which, at the time of conversion, SLT "had a general or specific title and of which the plaintiff was in actual possession or to which the plaintiff was entitled to immediate possession."  Ellis v. Alcuri, 710 So. 2d 1266, 1267 (Ala. Civ. App. 1997) (internal quotation and citations omitted).  In Ellis, the Court of Civil Appeals of Alabama affirmed a jury verdict in favor of a plaintiff claiming conversion because the jury "must have determined that the" plaintiff owned the property and "could have found that the [plaintiff] acquired title to the [property] by virtue of a gift."  Id. at 1269.  The Supreme Court of Alabama subsequently recognized that plaintiffs who have the right to possess property can maintain an action for conversion even if they lack title in the property, but that this right "is limited to a set

of facts under which the plaintiff can maintain an action for conversion with only a possessory interest against another who is not the true owner or who has not wrongfully been deprived of possession." Ex parte Anderson, 867 So. 2d 1125, 1132 (Ala. 2003).  The court emphasized that its "holding should not be interpreted as overruling our prior decisions that state that general or specific title and possession are both requisite elements of conversion." Id. (emphasis in original).

The exception set out in Anderson does not apply in this case because it is undisputed that Tri, the only person who has ever held an ownership interest in the patent, is the true owner of the patent.  There is no evidence that SLT ever acquired title to, or possession of, the patent. To the contrary, SLT vigorously argues that Tri has kept title to the patent to himself for the duration of the patent's existence.  The possibility that Tri's refusal to honor an agreement to assign the patent to SLT at a given time does not establish that SLT ever had general or specific title to the patent.  The motion for summary judgment on Count Four is **GRANTED**.

## VIII.   COUNT SEVEN OF THE FIRST-PARTY COMPLAINT - INTERFERENCE WITH BUSINESS RELATIONS

SLT alleges that the defendants' refusal to assign the patent to SLT is interfering with SLT's tentative agreement to sell the patent to an "industry leader."  (Doc. 30, pp. 12-13).  The Supreme Court of Alabama set out five elements that make up the tort of intentional interference with business or contractual relations.

(1) The existence of a contract or business relation;

(2) Defendant's knowledge of the contract or business relation;

(3) Intentional interference by the defendant with the contract or business relation;

(4) Absence of justification for the defendant's interference; and

(5) Damage to the plaintiff as a result of defendant's interference.

Gross v. Lowder Realty Better Homes & Gardens, 494 So. 2d 590, 597 (Ala. 1986) (footnote

omitted).

The defendants argue that "[t]he sole basis of this claim is Tri Tran's failure to assign his

patent to SLT, L.L.C."  (Doc. 80, p. 9).  They characterize the failure to assign the patent to SLT

as a "refusal to deal," which cannot support an interference with business relations claim

pursuant to Bear Creek Enters. v. Warrior & Gulf Navigation Co. 529 So. 2d 959 (Ala. 1988).  In

Bear Creek, Bear Creek's employees presented Bear Creek with a petition stating that they

wanted to unionize.  Id. at 960.  Warrior & Gulf, Bear Creek's only customer, subsequently

terminated its subcontract agreement with Bear Creek.  Id.  Bear Creek and its employees sued

Warrior & Gulf for intentional interference.  Id.  The court held that, although Warrior & Gulf

knew about the contract or business relation between Bear Creek and its employees, Warrior &

Gulf was not liable for intentional interference.  This was true even if Warrior & Gulf ended its

relationship with Bear Creek because Warrior & Gulf did not want Bear Creek to use unionized

labor.  Id. at 960-61.  Quoting the Restatement (Second) of Torts, the court held that a party

"may ordinarily refuse to deal with another, and the conduct is not regarded as improper. . . ."

Id. at 961.  As an example, although "A may not, without some justification induce B to break

his contract with C, A is ordinarily free to refuse to deal with B for any reason or no reason . . . .

A's aversion to C is as legitimate a reason for his refusal to deal with B as his aversion to B."  Id.

(ellipses in Bear Creek, quotations omitted).

In this case, there is no evidence that any defendant is inducing the "industry leader" to

take any action.  Rather, the evidence shows that the defendants are refusing to deal with SLT.

Even if the defendants are refusing to deal with SLT because they are averse to the tentative

agreement with the "industry leader" (and there is no evidence in the record of such a

motivation), there is no cause of action for intentional interference with business relations.

Summary judgment is **GRANTED** on Count Seven.

## IX.     COUNT SIX OF THE FIRST-PARTY COMPLAINT - CIVIL CONSPIRACY

SLT alleges that the defendants conspired to compete unfairly with SLT, misappropriate

SLT's trade secrets, and commit fraud against SLT.  (Doc. 30, p. 12, ¶ 55).  SLT also alleges that

the defendants conspired to defraud SLT out of the $7,000 that was paid to one of the

defendants' relatives and to defraud SLT out of the $15,000 that was paid to TLVK.  (Doc. 30, p.

12, ¶¶ 56 and 57).  The defendants argue that they are due summary judgment because there is

no evidence that any of the defendants acted in concert to carry out wrongful acts, that the

defendants sought to attain an unlawful goal, or that the defendants utilized unlawful means to

achieve a lawful end.  (Doc. 80, pp. 8-9).

Civil conspiracy is a substantive tort under Alabama law.  Ex parte Reindel, 963 So. 2d

614, 621 n.11 (Ala. 2007).  "'In essence, civil conspiracy is a combination of two or more

persons to do: (a) something that is unlawful; [or] (b) something that is lawful by unlawful

means.'"  Id. (alteration in original).  "'The gist of an action alleging civil conspiracy is not the

conspiracy itself but, rather, the wrong committed.'"  Hooper v. Columbus Reg'l Healthcare

Sys., 956 So. 2d 1135, 1141 (Ala. 2006).  Without such an underlying wrong, there cannot be a

successful action for civil conspiracy.  Id.

SLT argues that, because Tri and Lien "do all things 'fifty-fifty,'" they committed an

underlying tort when they jointly refused to assign the patent to SLT.  SLT does not name a tort

that Tri and Lien committed when they refused to assign the patent to SLT, much less explain

how Tri and Lien acted together to commit such a tort.  This court has granted summary

judgment on all of the causes of action that the defendants called to task in their motion for

summary judgment.  There is no evidence that the causes of action that the defendants chose not

to attack in their motion for summary judgment are viable.  Consequently, there is no evidence

that Tri or Lien committed an underlying wrong to support a claim for conversion.  The motion

for summary judgment is **GRANTED**.

## X.    COUNT THREE OF THE THIRD-PARTY COMPLAINT - LAWSUIT ON PROMISSORY NOTE

The defendants argue that they are owed principal and interest in the amount of

$41,681.00 and seek summary judgment in that amount.  (Doc. 80, p. 10).  Although there is

nothing in the record establishing that the proper amount of interest due on the note is the $5,181

difference between the $41,681 that the defendants' seek and the $36,500 principal due on the

note, Parnell has not responded at all to this aspect of the motion for summary judgment.  It is

therefore **GRANTED**.

## XI.    CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** as to all claims against

V.T., K.T., TLVK, and Eye Express.  Summary judgment is also **GRANTED** on Counts One,

Two, Three, Four, Five, Six and Seven of the first-party complaint as to all defendants.

Summary judgment is also **GRANTED** on Count Three of the third-party complaint.

The court has not considered the merits of Counts Eight, Nine or Ten of the first-party

complaint, or of Tri's counterclaim, or of Counts One, Two, or Four of the third-party complaint.

**DONE and ORDERED** this 2nd day of March, 2009.

/s/ Callie V. S. Granade
CHIEF UNITED STATES DISTRICT JUDGE